UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PEGGY J. GANTER                                                                                          PLAINTIFF

v.                                                                                      CIVIL ACTION NO. 3:03CV-644-S

JOHN E. POTTER, POSTMASTER GENERAL                                          DEFENDANT

## MEMORANDUM OPINION

  This matter is before the court upon the motion of the defendant, John E. Potter, the Postmaster General of the United States (the "Postmaster General"), to dismiss, or in the alternative, for summary judgment. As stated in our Order issued on February 6, 2006 (DN 38), this motion has been converted into one for summary judgment and will be disposed of pursuant to Fed. R. Civ. P. 56. The Postmaster General argues that he is entitled to summary judgment, because the plaintiff, Peggy J. Ganter ("Ganter"), (1) failed to exhaust all applicable administrative remedies prior to filing suit, (2) is unable to set forth a *prima facie* case for age or disability discrimination or retaliation, or both.

  A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153-61, S. Ct. 1598, 1606-10, 16 L.Ed.2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some

significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592-93, 20 L.Ed.2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

## BACKGROUND

This is an age and disability discrimination case. Ganter contends that the United States Postal Service (USPS) discriminated against her based on age and/or physical disability when: (1) in 1996 it breached its settlement agreement with her by failing to make every reasonable effort to accommodate and place her in a position that fell well within her medical restrictions; (2) in 1997 it failed to respond to her September 25, 1997, letter, in which she asked to be allowed to return to her assigned rehabilitation job of Window Clerk Modified; and (3) in 1999 it eliminated her Window Clerk Modified position and demoted her from a grade of PS-5 to PS-4, retroactive to May 17, 1998. Ganter also alleges that each of these events were in retaliation for her having filed claims with the Office of Equal Employment Opportunity (EEO).

Ganter, now deceased, was first employed by the USPS in 1989 as an Automated Markup Clerk. She claims that she experienced two work related injuries, one in July 1989 to her back, and another in 1990 to her wrist in the form of carpal tunnel syndrome. The Office of Worker's Compensation Programs (OWCP) accepted Ganter's claims for compensation based on both injuries.

In March 1996, the USPS offered Ganter the position of Window Clerk Modified to accommodate the physical limitations she alleged resulted from those injuries. In April 1996, Ganter's husband, Roger Ganter, acting on her behalf, informed the OWCP that Ganter did not consider this offer acceptable. He requested that the OWCP determine the suitability of the USPS' job offer. There were subsequent negotiations between Ganter and the USPS.

On June 5, 1996, Ganter accepted the Window Clerk Modified position with noted reservations, and on June 8, 1996, Ganter was assigned to that position, which resulted in her being promoted from PS-4 to PS-5. Around July 15, 2006, Ganter stopped working. She claims she ceased work due to a recurrence of carpal tunnel and the USPS' failure to provide her with modified furnishings, which would have allowed her to fully perform the functions of the Window Clerk Modified position.

On September 10, 1996, the OWCP notified Ganter that she had not shown a justifiable reason for leaving her position, and on October 2, 1996, the OWCP terminated Ganter's compensation on grounds that she had abandoned suitable employment. Then in December, the OWCP denied Ganter's claim for recurrence of carpal tunnel syndrome. On September 25, 1997, Ganter sent a letter to Glenda Riggs ("Riggs"), Senior Injury Compensation Specialist, asking to be returned to her "rehab" job, the Window Clerk Modified position. Riggs claims she did not respond because Ganter's OWCP claim had at that point been denied, and the issue of her return to work was being handled by other USPS employees.

On April 7, 1998, Butch Gavin ("Gavin"), Customer Services Manager and Ganter's immediate supervisor for administrative purposes, sent Ganter a letter in which he: (1) asked her to submit her most recent restrictions; (2) asked her to identify any positions she thought she could perform safely; (3) advised her of the procedures for requesting light duty; and (4) informed her of who to contact for information on disability retirement. Ganter responded stating that she wished to be returned to the Window Clerk Modified position, that she could do "occasional typing of 15-20 words per hr.," and that her restrictions were otherwise unchanged. Gavin replied on May 12, 1998, explaining to Ganter that her response was inadequate and asking that she fully respond to the requests in his April 7 letter. In this same reply, Gavin informed Ganter that the Window Clerk Modified position no longer existed because Ganter no longer had an accepted claim with the OWCP.

On January 12, 1999, Ganter was informed that she was to report for a Fitness for Duty Evaluation. This evaluation was being conducted to determine her ability to perform the duties of her original position as an Automated Markup Clerk. Ganter responded in a January 23, 1999, letter that she considered her position to be that of a Window Clerk Modified. On March 23, 1999, Gavin again informed Ganter that her position of Window Clerk Modified no longer existed and that she was being reassigned to her position as an Automated Markup Clerk at a PS-4 grade, retroactive to May 12, 1998. On April 1, 1999, Ganter's position was officially changed to Automated Markup Clerk, effective as of May 9, 1998, at a PS-4 grade.

Ganter never returned to work after she left in July 1996. She ultimately took disability retirement in May 2000, and then filed this suit against the Postmaster General in 2003.

## ANAYLSIS

### I. Failure to Exhaust Administrative Remedies

A federal employee seeking to advance discrimination claims in federal court must first exhaust her available administrative remedies. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976); *Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1078 n.4 (6th Cir. 1988). This requires the employee to raise her discrimination claim with the EEO within forty-five (45) days of the alleged discriminatory act. 29 C.F.R. § 1614.105(a)(1). This 45-day period is treated as a "'statute of limitations for filing suit . . . .'" *Johnson v. U.S. Treasury Dep't*, 27 F.3d 415, 416 (6th Cir. 1994) (quoting *Miles v. Dep't of the Army*, 881 F.2d 777, 780 (9th Cir. 1989)). It begins running from the time of the alleged discriminatory act, and failure to timely file can be fatal to the employee's claims. *Id.* at 416.

The Postmaster General alleges that the third count of Ganter's Complaint must fail because she did not timely file a claim with the EEO regarding the discrimination alleged under that count. He argues that the discrimination alleged in count three occurred no later than May 12, 1998, when Ganter, by virtue of a letter from Gavin, was notified that she would not be reassigned to her

previous position of Window Clerk Modified. In his letter Gavin explains that the Window Clerk Modified assignment "was made in accordance with the Department of Labor regulations under the Federal Employee Compensation Act. In as much as you no longer have an accepted claim with the Department of Labor that assignment no longer exists." Ganter does not dispute her receipt of this letter. However, she contends that the discriminatory act did not occur until March 25, 1999, when she received "official notification" that she was being demoted from PS-5 to PS-4, retroactive to May 12, 1998.

The crux of Ganter's third count is that the USPS eliminated the Window Clerk Modified position to which Ganter claims she was permanently reassigned without providing her sufficient justification. Ganter was notified of this elimination in the May 12, 1998, letter from Gavin. Our review of the record fails to demonstrate how the March 25, 1999, letter was any more "official" than the May 12, 1998, letter. The purpose of the March 25, 1999, letter was not to inform Ganter that the Window Clerk Modified position was being eliminated, but to note that the USPS had failed to modify her PS 50 form to reflect her reassignment to her original position of Automated Markup Clerk and corresponding change in grade to PS-4. In fact, in the March 25, 1999, letter, Gavin reminds Ganter of the May 12, 1998, letter in which he advised her that the Window Clerk Modified position no longer existed. The record clearly demonstrates that the alleged discriminatory act occurred on May 12, 1998, and thus, Gantor's filing with the EEO in March 1999 is untimely. Summary judgment dismissing count three will be granted.

## II. Age Discrimination

To establish a *prima facie* claim of age discrimination under the Rehabilitation Act of 1973, as well as the Age Discrimination in Employment Act of 1967 (ADEA), a plaintiff must show that: (1) she was at least forty (40) years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was qualified for her position; and (4) she was treated differently from those employees under 40. *Tuttle v. Metropolitan Government of Nashville*,

474 F.3d 307, 317 (6th Cir. 2007) (citing *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir.2004)); *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir.2004).

Here, Ganter entirely fails to explain how the USPS treated her differently from those employees under 40. She makes no allegations of mistreatment due to age other than bare assertions of age discrimination, which, alone, do not suffice. Thus, she cannot make out a case for age discrimination. Accordingly, we will grant summary judgment dismissing Ganter's claims of age discrimination.

### III. Disability Discrimination

A *prima facie* case of disability discrimination requires the plaintiff to demonstrate that: (1) she was disabled; (2) she was otherwise qualified to perform the job requirements, with or without reasonable accommodations; and (3) she was denied a reasonable accommodation solely by reason of her disability. *Peltier v. U.S.,* 388 F.3d 984, 989 (6th Cir. 2004); *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir.2002).

Here, there is no dispute that Ganter was disabled. There also seems to be no dispute that Ganter was otherwise qualified for her original position as an Automated Markup Clerk. The dispute centers on whether the USPS denied her a reasonable accommodation.

The Postmaster General argues that it was the OWCP that placed Ganter into the Window Clerk Modified position in connection with her OWCP claim and not as an accommodation for a disability. The Postmaster General further asserts that it was the OWCP that ended the Window Clerk Modified position, and because of this, the Postmaster General contends that the USPS is absolved from any liability flowing from the terms or elimination of that position. We disagree.

The Postmaster General's argument is a difference without a distinction. An employer who knows of an employee's physical or mental disability must make reasonable accommodations upon the employee's request for such. 42 U.S.C. § 12111(b)(5)(A); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042. 1046-47 (6th Cir.1998). The USPS knew of Ganter's physical limitations and her

request for accommodation. Thus, it was obligated to make such accommodations regardless of any directive from the OWCP.

However, issues of material fact remain as to whether the Window Clerk Modified position was itself a reasonable accommodation, and if so, whether the subsequent rescission of that position was a denial of reasonable accommodation. A reasonable accommodation includes modifications and adjustments of the employee's duties under the position she holds. But, it may also include job reassignment if alternative positions are reasonably available under the employer's policies. *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 289 n.19, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 634 (6th Cir.1999).

Ganter contends that the Window Modified Clerk position was unreasonable in so far that she was not provided with the modified furnishings promised to her by the USPS when it offered her the Window Clerk Modified position. She also argues that the USPS had alternative work available within her restrictions. The creation of the Window Clerk Modified position suggests Ganter may be correct. If so, then a reasonable juror could find that the elimination of that position was a denial of reasonable accommodation.

Moreover, the Postmaster General's argument that the USPS otherwise has a legitimate, non-discriminatory reason for denying Ganter a reasonable accommodation is without merit. The Postmaster General asserts the because the Window Clerk Modified position was created "to meet Plaintiff's restrictions resulting from her compensable injury," when the OWCP sanctioned compensation was terminated, "there was no further need for the position." This, however, ignores the fact that regardless of Ganter's OWCP claim, the Postal Service was obligated to provide her with reasonable accommodation. Whether the USPS has another legitimate, non-discriminatory reason for possibly denying Ganter a reasonable accommodation is unknown.

### IV. Retaliation

The Postmaster General also contends that Ganter failed to exhaust her administrative remedies with regard to her claims of retaliation under counts one and two of her Complaint by failing to raise retaliation as part of her EEO claims. As discussed above, exhaustion of administrative remedies is a prerequisite to a federal employee properly bringing a claim before a federal court. However, an employee is not generally required to file multiple EEO claims, one alleging discrimination and another alleging subsequent retaliation, to properly exhaust her administrative remedies as to a retaliation claim. *See Sullivan v. Coca-Cola Bottling Co. of Ohio/Kentucky*, 182 Fed.Appx. 473, 479 (6th Cir. 2006) (discussing *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir.1998)). Only when the alleged retaliation occurred *prior to* the EEO filing is the plaintiff required to have specifically made a retaliation claim with the EEO prior to bringing suit for the same in federal court. *Id.* Otherwise, an EEO claim for discrimination is a sufficient predicate. *See Abeita*, 159 F.3d at 254 (finding that with regard to the EEO predicate filing that "Retaliation claims are generally excepted from this filing requirement because they usually arise after the filing of the EEOC charge."). Thus, Ganter's retaliation claims under counts one and two of her Complaint are properly before this court.

Yet, to survive summary judgment, Ganter must still establish a *prima facie* case of retaliation. To do so she must show that: (1) she engaged in protected activity; (2) the USPS knew of that protected activity; (3) the USPS thereafter took adverse employment action against her or subjected her to severe or pervasive retaliatory harassment; and (4) there was a causal connection between her protected activity and the adverse employment action or retaliatory harassment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792-93 (6th Cir. 2000).

The Postmaster General does not dispute that the USPS knew of Gantor's EEO filings. These filings constitute protected activity. Furthermore, he fails to dispute Gantor's claims of adverse employment action. Nonetheless, Ganter must still present clear evidence of adverse action or

retaliatory harassment to establish this element of her case. *See Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999). To succeed, she must show a "materially adverse change in the terms and conditions of [her] employment." *Id.* (quoting and adopting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993). This change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* It "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* Any harassment must be sufficiently severe or pervasive to create a work environment that the reasonable person would perceive as hostile. *Akers v. Alvey*, 338 F.3d 491, 498 (6th Cir. 2003). Basically, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult . . . ." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

Ganter's allegations of adverse action include reassignment to her original position as an Automated Markup Clerk and the corresponding Fitness for Duty examination she was required to undergo. Because the Window Clerk Modified position was at a higher grade than the Automated Mark Clerk position, Ganter's reassignment to her original position could constitute an adverse action. However, because an issue remains as to whether termination of that position was a denial of a reasonable accommodation, we are unable to say whether her reassignment was truly an adverse action or whether the USPS has a legitimate, non-discriminatory reason for returning Ganter to her original position. Thus, we cannot grant summary judgment on Ganter's retaliation claims. We note, however, that no retaliation claim can exist under count three since Ganter failed to claim either discrimination or retaliation with the EEO for that count. As stated earlier, count three will be dismissed in its entirety.

A separate order will be entered herein this date in accordance with this opinion.