UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PEGGY J. GANTNER                                                                                      PLAINTIFF

v.                                                        CIVIL ACTION NO. 3:03CV-644-S

JOHN E. POTTER, POSTMASTER GENERAL                       DEFENDANT

## MEMORANDUM OPINION

This matter is before the court upon the motion of the defendant, John E. Potter, the Postmaster General of the United States (the "Postmaster General"), to reconsider or set aside a portion of this court's Memorandum Opinion and Order entered March 29, 2007. The Postmaster General asks the court to grant judgment and dismiss the remaining claims filed by the plaintiff, Peggy J. Gantner ("Gantner")[1].

## BACKGROUND

Gantner contends that the United States Postal Service (USPS) discriminated against her based on her age and physical disability. On March 29, 2007 this court granted in part the Postmaster General's motion for summary judgment, dismissing Count III of Gantner's complaint in its entirety and dismissing Gantner's claims of age discrimination. *See Gantner v. Potter* Civil Action No. 3:03CV-644-S Memorandum Opinion and Order (March 29, 2007) (hereinafter "*Gantner I*"). We declined to grant judgment as to Gantner's claims for disability discrimination and retaliation, finding that "issues of material fact remain as to whether the Window Clerk

---

[1] The Postmaster General has also filed a motion for leave to substitute an exhibit filed with his Motion for Reconsideration. In considering the Postmaster General's Motion for Reconsideration, the court has reviewed the substitute exhibit.

Modified position was itself a reasonable accommodation, and if so, whether the subsequent rescission of that position was a denial of a reasonable accommodation." *See Id.* at 7-9.  The Postmaster General now asks that we reconsider our findings on the issue of summary judgment, set aside that portion of our judgment in which we determined that a genuine issue of material fact exists, and dismiss the remainder of Gantner's claims.

As set forth in *Gantner I*, the facts and circumstances which form the basis of Gantner's claims against the Postmaster General arise from Gantner's employment with the USPS.  Gantner, now deceased, was initially employed by the USPS in 1989 as an Automated Markup Clerk.  After claiming that on the job she suffered a back injury and a carpal tunnel injury to her wrist, the Office of Workers' Compensation Programs (OWCP) accepted her claims for compensation based on both injuries.  In January of 1991, the USPS entered into an EEO Settlement Agreement with Gantner, in which the USPS agreed to make every reasonable effort to accommodate her and place her in a position within her medical restrictions, should she recover sufficiently to return to work in a limited duty capacity.

In March of 1996, the USPS offered Gantner the position of "Window Clerk Modified," a position the Postmaster General contends was created solely for purposes of complying with the requirements of the Federal Employees' Compensation Act (FECA).  She accepted the position on June 5, 1996, which resulted in her being promoted from a PS-4 grade to a PS-5 grade, with noted reservations about its suitability in light of her physical limitations and medical restrictions.  Around July 15, 1996, Gantner stopped working.  She claims she ceased work due to both a recurrence of her prior carpal tunnel syndrome and because of the USPS's failure to provide her with modified

furnishings. She claims the modified furnishings would have allowed her to fully perform the functions of the Window Clerk Modified position.

On September 10, 1996, the OWCP notified Gantner that she had not shown a justifiable reason for leaving her Window Clerk Modified position. On October 2, 1996, the OWCP terminated Gantner's compensation benefits on grounds that she had abandoned suitable employment. Later, in December of 1996, Gantner was informed by the OWCP that her claim for recurrence of her carpal tunnel syndrome had been denied.

On September 25, 1997, Gantner sent a letter to Glenda Riggs ("Riggs"), Senior Injury Compensation Specialist, asking to be returned to the Window Clerk Modified position, which she referred to in her letter as her "rehab job." Riggs did not respond to Gantner's letter. She claimed that because Gantner's OWCP claim had, at that point, been denied, she felt that the issue of her return to work was being handled by USPS management.

Subsequently, on April 7, 1998, Gantner's immediate supervisor for USPS administrative purposes, Butch Gavin ("Gavin"), sent Gantner a letter in which he asked her to submit her most recent restrictions and to identify any positions she thought she could safely perform. Gantner responded by stating that she wished to be returned to the Window Clerk Modified position. Gavin replied by informing her that the Window Clerk Modified position no longer existed because Gantner no longer had an accepted claim with the OWCP.

On January, 12, 1999, Gantner was informed that she was to report for a Fitness for Duty Evaluation. The purpose of the evaluation was to determine her ability to perform the duties of her original position as an Automated Markup Clerk. Gantner responded in a January 23, 1999, letter stating that she considered her position to be "Window Clerk Modified." On March 23, 1999, Gavin

again informed Gantner that the position no longer existed and that she was being reassigned to her position as an Automated Markup Clerk at a PS-4 grade, retroactive to May 12, 1998. Gantner never returned to work after July 1996. She ultimately took disability retirement in May 2000.

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

### I. Disability Discrimination

As we noted in *Gantner I*, a *prima facie* case of disability discrimination requires the plaintiff to demonstrate that: (1) she was disabled; (2) she was otherwise qualified to perform the job requirements, with or without reasonable accommodations; and (3) she was denied a reasonable

accommodation solely by reason of her disability. *Peltier v. U.S.*, 388 F.3d 984, 989 (6th Cir. 2004); *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir. 2002).

The Postmaster General argues that the Window Clerk Modified position was not a "vacant, funded position" as contemplated by the Rehabilitation Act or the American with Disabilities Act (ADA) and therefore it is not properly viewed as an accommodation within the meaning of either Act. Rather, he argues that the Window Clerk Modified position was offered to Gantner pursuant to the requirements of the Department of Labor. We agree.

The Federal Employees' Compensation Act (FECA) provides for the payment of workers' compensation benefits to civilian officers and employees of all branches of the Government of the United States. *See* 20 C.F.R. § 10.0 The Department of Labor's Office of Workers' Compensation Programs (OWCP) administers the FECA and is required to provide for limited duty jobs to accommodate employees with compensable job-related injuries. *See* 20 C.F.R. § 10.507. The OWCP is responsible for determining if the limited duty job offered to the employee is "suitable work," and makes such determination based on an evaluation of the employee's physical limitations and all medical evidence concerning the employee's injury. *See* 20 C.F.R § 10.500 *et seq*. If the modified position is deemed to be suitable work by the OWCP and the injured employee accepts the position, she can continue to receive compensation benefits. However, if the injured employee refuses to accept a modified position deemed suitable by the OWCP, she will not be entitled to receive compensation benefits unless she can show just cause for such refusal. *See* 20 C.F.R § 10.517.

While the FECA requires that an injured employee be provided with such accommodations the OWCP deems necessary to allow the employee to perform "suitable work," the Rehabilitation

Act and the ADA require that reasonable accommodations be provided to disabled employees that are otherwise qualified to perform their job requirements.[2]  *See Peltier*, 388 F.3d at 989. A reasonable accommodation in accordance with the Rehabilitation Act and the ADA, includes modifications and adjustments of the employee's duties required by the employee's current position and may also include job reassignment if alternative positions are reasonably available under the employer's policies. *See School Bd. Of Nassau County v. Arline*, 480 U.S. 273, 289 n.19, 107 S.Ct. 1123, 94 L.E.2d 307 (1987); *Bratten v. SSI Servs., Inc.*, 185 F3d 625, 634 (6th Cir. 1999). However, an employer is not obligated to create a position not already in existence. *See Hoskins v. Oakland County Sheriff's Dep't.*, 227 F3d 719, 729 (6th Cir. 2000).

Gantner does not dispute that the Window Clerk Modified position was offered to Gantner by the USPS pursuant to the FECA and OWCP requirements. Rather, Gantner argues that the Window Clerk Modified position should also be viewed as the USPS's attempt at proving a reasonable accommodation under the Rehabilitation Act. However, Gantner offers no evidence indicating that the Window Clerk Modified position would have been a position in existence at the USPS if not for the FECA and OWCP requirements.

The record indicates that the Window Clerk Modified position was offered to Gantner solely in connection with her workers' compensation claim. Correspondence between Gantner, the USPS, and the Department of Labor discusses the position in terms of her workers compensation benefits. *See, e.g.* Defendant's Exhibit 3 (Department of Labor letter indicating Gantner's workers compensation claim file number as 060473286); Admin. Record No. 4D-400-0057-98 at 105

---

[2]The Rehabilitation Act, not the ADA, constitutes the exclusive remedy for a federal employee alleging disability discrimination. *See Peltier* 388 F.3d at 989 (6th Cir. 2004). "Because the standards under both the acts are largely the same, cases construing one statute are instructive in construing the other." *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997).

(Department of Labor letter describing the offer of the Window Clerk Modified position in reference to Gantner's workers compensation claim file number); Admin Record No. 4D-400-0032-99 at 91 (USPS letter informing Gantner that the Window Clerk Modified position was assigned in accordance with the FECA regulations and that upon termination of her accepted workers' compensation claim, the position was also terminated). Neither the Rehabilitation Act nor the EEO Settlement Agreement required the USPS to create the Window Clerk Modified position.

Because the record indicates that the USPS created the Window Clerk Modified position solely in an effort to satisfy their obligations under the FECA, we now conclude that our determination in *Gantner I*, that a genuine issue of material fact exists as to whether the Window Clerk Modified position was itself a reasonable accommodation, was erroneous.

The Postmaster General also argues that the rescission of the Window Clerk Modified position was not a denial of a reasonable accommodation. In light of our conclusion that the Window Clerk Modified position is not properly viewed as an accommodation under the Rehabilitation Act, we agree. The record indicates the rescission of the Window Clerk Modified position occurred when Gantner's workers' compensation benefits were terminated. Therefore we conclude that our determination in *Gantner I*, that a genuine issue of material fact exists as to whether the rescission of the Window Clerk Modified was a denial of a reasonable accommodation, was erroneous.

However, merely because the rescission of the Window Clerk Modified position was not a denial of a reasonable accommodation does not foreclose Gantner's opportunity to prove a *prima facie* case of disability discrimination. The USPS was still obligated to act in accordance with the

Rehabilitation Act and not deny a reasonable accommodation to an otherwise qualified disabled employee solely by reason of that employee's disability..

Clearly Gantner was disabled. Therefore, if Gantner can prove that she could perform the essential functions of her position, or a position she desires, with or without a reasonable accommodation, the USPS was under the obligation to provide her with a reasonable accommodation. *See Burns v. Coca-Cola Enter. Inc.*, 222 F.3d 247, 256 (6th Cir. 2000). However, the USPS was not obligated to accommodate Gantner by creating a position not then in existence. *See Hoskins*, 227 F3d at 729. Rather, the USPS needed only to reassign Gantner to a vacant position. *See Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998).

Gantner admits that she could not perform the requirements of her original position of Automated Markup Clerk with or without any accommodation. Nevertheless, if Gantner can identify another vacant position within the USPS whose requirements she could perform, with or without accommodation, the USPS would be required to provide her with such accommodation.

The Postmaster General offers evidence of a meeting between Gantner and USPS managers in which she indicated that she was unable to perform any job, with or without accommodation, for which she was eligible to apply, as well as Gantner's own statement that she could not perform the required functions, with or without accommodation, of any USPS position of which she was aware. Gantner does claim that she could perform the essential functions of the Window Clerk Modified job, if she were provided with a reasonable accommodation. However, this alone is not sufficient to create an issue of material fact. Despite her contention that it was to be permanent, the Window Clerk Modified position is not, and was not, a vacant position in existence at the USPS. As we have concluded, the Window Clerk Modified position was created solely in an effort to satisfy the FECA

and OWCP requirements. Furthermore, when Gantner ceased to receive workers' compensation benefits through the FECA, the USPS had no obligation to maintain Gantner in the Window Clerk Modified position. *See Thompson v. Henderson*, No. 06-5553, 2007 WL 930271 at *7 (6th Cir. March 28, 2007) (finding that the USPS had no obligation to maintain an employee on a limited-duty assignment once the employee's workers' compensation status expired).

Because Gantner has failed to proffer any evidence indicating that she could perform any existing vacant USPS position with or without accommodation, Gantner cannot prove a *prima facie* case of disability discrimination. Accordingly we will grant the Postmaster General's motion for reconsideration and grant summary judgment dismissing Gantner's claim for disability discrimination.

It should be noted that Gantner argues that her physical limitations and medical restrictions prevented her from fully performing the requirements of the Window Clerk Modified position, as offered to her pursuant to the FECA and the OWCP requirements. Ultimately, she alleges that the failure to provide modifications to the Window Clerk Modified position led her to leave the position. To the extent that Gantner claims the USPS failed to provide accommodations to the Window Clerk Modified position after the OWCP determined the position to be suitable work, that particular claim does not fall properly within the ambit of the Rehabilitation Act. As we have discussed, the Window Clerk Modified position was offered pursuant to the requirements of the FECA and the OWCP. The OWCP determined the Window Clerk Modified position to be "suitable work" in light of her physical limitations and medical restrictions. To the extent Gantner contends the Window Clerk Modified position was not suitable work, for want of additional modifications or accommodations, that claim would be properly adjudicated before the OWCP itself.

## II. Retaliation

In *Gantner I*, we set forth the elements of Gantner's *prima facie* case of retaliation. Gantner must show that: (1) she engaged in protected activity; (2) the USPS knew of that protected activity; (3) the USPS thereafter took adverse employment action against her or subjected her to severe or pervasive retaliatory harassment; and (4) there was a causal connection between her protected activity and the adverse employment action or retaliatory harassment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792-93 (6th Cir. 2000). If Gantner establishes a *prima facie* case, the burden shifts to the USPS to articulate some legitimate, nondiscriminatory reason for its actions. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (citing  McDonnell *Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).  Gantner must then demonstrate that the proffered reason was pretext for discrimination. *Gribcheck*, 245 F.3d at 550 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

In addition to the failure to accommodate, Gantner contends the adverse employment actions taken by the USPS are retroactively changing her position to Automated Markup Clerk, forcing her to take a Fitness for Duty exam, and terminating her. She claims these actions are causally connected to Gantner's filing of EEO complaints.

After determining the rescission of the Window Clerk Modified position was in accordance with the requirements of the FECA and the OWCP, there is no issue as to whether there was a causal connection between Gantner's EEO complaint filings and the return of Gantner to her position of Automated Markup Clerk, or her subsequent Fitness for Duty exam. After her workers' compensation claim was denied, the Window Clerk Modified position was terminated. Upon

termination of that position, Gantner would, by default, be returned to her original position as Automated Markup Clerk.

After returning to her original position, advising the USPS that she was unable to perform the required duties, and requesting that she be placed back in the Window Clerk Modified position, the USPS was obligated, in accordance with Section 13 of the Agreement between the United States Postal Service and the American Postal Worker's Union, to ask Gantner to submit to a Fitness for Duty exam. Under the Agreement, all USPS employees requesting reassignment due to injury are required to submit to a Fitness for Duty medical exam.

Lastly, Gantner offers no evidence that she was terminated by the USPS. Rather the record demonstrates that no termination occurred because Gantner applied for and was awarded disability retirement.

Consequently, Gantner cannot make out a *prima facie* case of retaliation. Even if Gantner could make out a *prima facie* case, she has failed to show that the USPS's legitimate nondiscriminatory reasons for their actions are pretext. Accordingly we will grant the Postmaster General's motion to reconsider and grant summary judgment dismissing Gantner's claim for retaliation.

A separate order will be entered herein this date in accordance with this opinion.